OPINION OF THE COURT
Preston S. Scher, J.
This is a case of first impression involving the confidentiality provisions of Social Services Law § 422 in interaction with Penal Law § 240.55 (3). Defendant herein is charged with having falsely reported an incident of child neglect to the Statewide Central Register of Child Abuse and Maltreatment, which constitutes an A misdemeanor under Penal Law § 240.55 (3). On consent of the parties, the court began conducting a Huntley hearing.
During the course of the Huntley hearing, the People made a motion to have a certain record, prepared by Child Protective Services (CPS) and maintained by the Westchester County Department of Social Services (DSS) unsealed and disclosed, to be used in the prosecution of the defendant. The defendant opposes such motion and has also filed a cross motion to unseal the same type of records, pertaining to a nonparty to this action, to be used in his defense. The Westchester County Attorney, on behalf of the Department of Social Services, has filed an answering affirmation setting forth their position on the matter. While DSS does not dispute the People’s contention that the information contained in its sealed records is rel *846 evant and material to the defendant’s prosecution, it points to the applicable statutes which prevent it from voluntarily disclosing the records.
BACKGROUND
In 1973, article 6, title 6, § 422 of the Social Services Law established the Statewide Central Register of Child Abuse and Maltreatment (SCR) to receive reports of suspected child abuse or neglect and then pass these on to local Social Services Departments for investigation and, if necessary, appropriate action. The statute requires that the reports be classified, according to the results of the investigation, as either indicative of the allegations or “unfounded”. If an indication of abuse or neglect is present, the law requires SCR to refer the case for action by the appropriate agency and then to maintain the records until 10 years after the youngest child named in the report attains 18 years of age. If an investigation reveals no credible evidence to support the allegations, the report is to be classified “unfounded” and the records sealed. (Social Services Law § 422 et seq.)
In section 422 (4) (A) the statute deals with the confidentiality of reports made to the SCR and the instances in which disclosure is permissible. When first enacted, section 422 (4) (A) provided, in pertinent part: “Reports made pursuant to this title as well as any other information obtained, reports written or photographs taken concerning such reports in the possession of the department, local departments, or the commission on quality of care for the mentally disabled, shall be confidential and shall only be made available to”. The statute then lists 20 parties denominated under clauses (a) through (t) which will be permitted access to the reports in order to assist in the carrying out of their particular official functions. Among the parties so specified, clause (e) provides that the reports shall be made available to “a court, upon a finding that the information in the record is necessary for the determination of an issue before the court” (Social Services Law § 422 [4] [A] [e] [emphasis added]).
Subsequent amendments to section 422 (4) (A), in 1993 and 1996, expanded the list of parties allowed disclosure from 20 to 22, by adding clauses (u) and (v). (L 1993, ch 441, § 3; L 1996, ch 12, § 8.)
In 1989, the Social Services Law was amended to address the issue of false or baseless reporting. A provision was included which requires DSS or CPS to refer those cases which *847 are determined to be unfounded, because they were based on false reports, to law enforcement agencies for prosecution. (Social Services Law § 422 [14].) Contemporaneously therewith, the Penal Law was amended to include section 240.55 (3), criminalizing the false reporting of an incident of child abuse or neglect when done knowingly.
Research by the court has revealed that many other jurisdictions have enacted similar laws.[1] In reviewing the background and historical development of these laws, it becomes clear that the legislative intent behind these amendments was to (1) criminalize false reporting to prevent the serious effect such allegations had on innocent individuals and families; (2) deter false reporting by encouraging their investigation; and (3) discourage the misuse of SCR and the attendant diversion of scarce agency resources.
In 1996, in yet another effort to increase the accountability of agencies responsible for child abuse investigations, the law was once again amended by chapter 12 of the Laws of 1996. What commonly became known as “Elisa’s Law” (in memory of a child victim of abuse who had “fallen between the cracks”) was enacted. The purpose behind the new law was to allow greater latitude in child abuse investigations, in the hope that a more thorough followup would prevent repeat incidents of serious child abuse. Elisa’s Law also caused a number of other laws related to child protection, including the Mental Hygiene Law, the Domestic Relations Law and the Family Court Act to be amended. Social Services Law § 422 (5) was also amended to permit agencies to access old records when the same child was involved in a subsequent report, to ascertain whether a pattern existed which indicated repeated abuse. Whereas, originally, section 422 (5) provided that unless an investigation revealed some credible evidence of the alleged abuse or maltreatment, the record was to be expunged, the 1996 amendment changed the expungement directive to one for legal sealing of unfounded reports. It also added provisions allowing the unsealing of unfounded reports during investigation of subsequent allegations involving the same child, and provided that unfounded reports would not be admissible as evidence in any judicial or administrative proceeding. {Ibid.) However, the Legislature saw fit to retain Social Services Law § 422 (4) (A) *848 unchanged, except for the addition of three agencies which had not been previously included, which would be allowed access to those records. Section 422 (4) (A) (e) and (Z), which gave access to the courts and District Attorneys, were left unchanged.
It is against this background that the court is being asked to rule on the People’s motion to have the SCR file on the defendant disclosed for purposes of his prosecution under the false reporting statute.
THE FACTS
The underlying fact's in this case are as follows: sometime in 1997, a report was received by SCR which alleged that the defendant and his spouse were suspected of child neglect. Upon investigation by Westchester Child Protective Services, the allegations were determined to be unfounded and, therefore, the file on the defendant was sealed pursuant to the Social Services Law. However, the People allege that, during a telephone conversation with an investigator for CPS, the defendant made some allegedly incriminating statements which were recorded by the worker and became part of the record now in the hands of the Westchester Department of Social Services. The People maintain that defendant’s statements are probative of the fact that he later made a false report regarding a neighbor family who is not a party to this action. The District Attorney now seeks to introduce the record of the defendant’s alleged statements, contained in the CPS report, as a business record. Accordingly, the People have moved for an order from this court directing that such records be unsealed and produced, even if such an order must be narrowly tailored so as to carry out justice while, at the same time, safeguard the confidentiality of such records.
In support of their motion the People rely on section 422 (4) (A) (e) and (Z) and the history and legislative intent behind both Social Services Law § 422 and Penal Law § 240.55. Social Services Law § 422 (4) (A) provides, in pertinent part, that: “[r]eports made pursuant to this title * * * shall be confidential and shall only be made available to * * *
“(e) a court, upon a finding that the information in the record is necessary for the determination of an issue before the court * *
“(Z) a district attorney, an assistant district attorney or investigator employed in the office of a district attorney * * * when such official requests such information stating that [it] is necessary to conduct a * * * criminal prosecution of a person, *849 that there is reasonable cause to believe that such person is the subject of a report * * * and that it is reasonable to believe that due to [the] nature of the crime under investigation or prosecution, such records may be related to the criminal investigation or prosecution”.
The People argue that since both of these provisions were left intact when the Legislature made subsequent amendments to Social Services Law § 422, this is indicative of their intent to ensure that the above two parties retained their access to the reports, limited only by the caveat that they be used strictly for statutory purposes, and not to persecute or embarrass the individuals named therein. They posit that to interpret these two laws any other way would effectively render Penal Law § 240.55 (3) virtually unenforceable and meaningless.
In his opposition and cross motion, defendant argues that (1) the unsealing of the records sought by the People is not in compliance with existing law; (2) disclosure is only available when there is a subsequent report of abuse or neglect involving the same child; and (3) even if disclosure were permitted, the 1996 amendment to Social Services Law § 422 (5) makes it clear that unfounded reports shall not be admissible as evidence in any judicial or administrative proceeding or action. He maintains, not without some merit, that the very purpose of Elisa’s Law is operative in this case, i.e., to protect falsely accused families such as his own. He claims that the statute is clear on the instances in which files may be opened and that extension of the law should be left to the Legislature and not carried out by the courts.
Defendant additionally makes a cross motion to obtain disclosure of the record compiled as a result of the false report he is accused of lodging. He argues that such report is essential to his defense in that (1) it would allow him to find out how CPS arrived at its determination that the allegations against his neighbors were unfounded, and whether such conclusion was properly reached; and (2) it may contain the name of the person who made the report to SCR or other information which might exculpate him.
In its submission, DSS states that while the information contained in their records may be material and relevant to this prosecution, and their intention is not to thwart the People’s case, it is presently bound by the law which prevents it from turning over the information unless court ordered to do so. However, DSS reasons that, since the Legislature enacted Penal Law § 240.55 (3) (criminalizing false reporting) and *850 Social Services Law § 422 (14) (requiring Social Services to refer suspected cases of false reporting to law enforcement agencies) in close proximity, they clearly intended that there be cooperation between Social Services Departments and the District Attorneys’ offices. DSS also urges that, if the court finds that the information contained in their files is necessary for the determination of the case at bar, it narrowly tailor its unsealing order, so as to safeguard the confidentiality requirements of the Social Services Law.
DISCUSSION
The statutory language in the relevant sections of the Social Services Law, together with the legislative history and intent behind their enactment and subsequent amendments, make it abundantly clear that the main thrust , of these laws has been to increase the awareness and remediation of child abuse and neglect, a problem which inexorably alters the lives of innocents and debases our society as a whole. However, it is also clear that, in our attempt to increase vigilance and decrease the incidence of child abuse, some individuals and families have been made to suffer anguish, humiliation and loss of respect and even jobs in some instances, by baseless complaints lodged by individuals with personal agendas totally unrelated to their concern for a child’s safety or welfare.
Review of New York cases regarding disclosure of other types of confidential and privileged information, while not exactly on point, have been instructive to the court. One such case is People v Reidout (140 Misc 2d 632 [Sup Ct 1988]). In that case, the defendant was charged in the murder of his wife and 13-year-old stepdaughter and the attempted murder of his seven-year-old son and nine-year-old stepson. The two boys were to be called as witnesses for the People, and the defendant subpoenaed their psychiatric treatment records to be used for purposes of attacking their credibility during cross-examination. The treating hospital moved to quash the subpoena on the ground that the records were protected under the physician-patient privilege, and their disclosure would have a chilling effect on the boys’ ability to confide in and trust their therapist, thus hindering their recovery.
Faced with the dilemma of accommodating both the defendant’s right to conduct unfettered cross-examination, and the witnesses’ expectation in the privacy of their treatment records, the court concluded that the defendant would not be allowed open access to the records, in order to maintain their *851 confidentiality. Instead, the court would review the records in camera and segregate those statements that were appropriate for defendant’s use in impeaching the witnesses. “Rather than allowing defense counsel to determine, from his review of the records, whether they contain any inconsistent statements, the court must become the arbiter of the issue and determine, on its own, whether any such information is contained in the records sought”. (140 Misc 2d, supra, at 641.)[2]
Being fully mindful of the implications of its decision, this court likewise concludes that the records maintained by the Department of Social Services regarding the unfounded report on the defendant shall be produced for an in camera inspection whereby the court may determine whether any of the information contained therein may be probative of the charges levied by the People against the defendant.
The court bases its decision on the following:
In enacting Penal Law § 240.55 (3) in the same year as Social Services Law § 422, the New York Legislature sought to address the issue of false reports to SCR. By later enacting Social Services Law § 422 (14) in 1989, it recognized the necessity of referring such cases of false reporting to law enforcement agencies for prosecution, in order to punish those who knowingly lodged such false reports. The obvious concern of the Legislature was to prevent the misuse of State resources and protect those falsely accused from the often devastating effects of an investigation. Thus, the sealing of DSS unfounded reports is meant to shield those falsely accused of child abuse or neglect, not those individuals accused of knowingly making false accusations with SCR. As the subject of an unfounded report, defendant and his family are entitled to the protection of the confidentiality provisions in the Social Services Law. However, that right to privacy extends only to their freedom from subsequent speculation and embarrassment about their character as guardians of their children or potential violators of the child protection laws. It certainly does not apply to privacy regarding matters which are unethical or criminal in nature.
*852 The CPS records at issue herein might or might not contain information regarding the crime with which the defendant is charged. However, to rule that their use for purposes of investigating or prosecuting is precluded would render the Penal Law useless. For example, it would be ludicrous to maintain that even though an investigation revealed no child abuse occurred and, therefore, the report was categorized as unfounded, if the subject of the investigation was found to have committed another crime, he or she would be immune from legal consequences because the evidence in those records could not be accessed. To come to such a conclusion would be tantamount to holding that the Legislature enacted laws and then proceeded to create impediments to their enforcement, thus rendering them a nullity.
With respect to the statutory admonition in Social Services Law § 422 (5) against use of CPS records as admissible evidence at trial, the court perceives no conflict with their use herein. It is clear that the confidentiality provisions in the law were meant to protect the rights of those victimized by false or baseless reports; so if the sealed reports were later sought to be used against the subjects thereof for the type of allegations which had been found baseless, the court could not permit their use. Thus, if the defendant herein was being investigated or prosecuted for the same type of conduct of which the report had cleared him, those records would not be admissible. But here, the defendant is not being tried for the conduct alleged in the sealed report, but instead for an unrelated alleged action which happens to be criminal. The People do not seek to use the sealed records to prove the type of allegations previously determined to be unfounded, so that the defendant is not being haunted by the specter of child neglect. Thus, while we agree with the prohibition against use of those records to proceed against the subject of an unfounded report to prove the truth of the matters therein alleged, we do not interpret such prohibition to extend to their use for any other purpose, and therefore their use in the case before the court would not violate the spirit of the law.
Another fact which supports the court’s interpretation of the law is that, when the Legislature amended Social Services Law § 422 (5) in 1993, it did not amend or negate any of the provisions of section 422 (4) (A) which include clauses permitting both the courts and the District Attorneys’ offices to access records maintained by DSS. (Social Services Law § 422 [4] [A] [e], [Z].) Thus, it is patently clear that the Legislature intended for *853 those provisions to remain in force. Consequently, insofar as conflict exists between sections of the Social Services Law, the court’s narrowly tailored order of disclosure allows the desired confidentiality of CPS records to remain intact while allowing the use of evidence which is material and relevant to the determination of the case before it.
As to defendant’s cross motion to allow him access to the CPS file on his neighbor, same is hereby denied. The court finds no statutory authority nor valid legal purpose to permit such disclosure to defendant. The confidentiality provisions of the Social Services Law apply to the subjects of the unfounded report the defendant seeks access to. But, unlike the circumstances which justify disclosure in defendant’s case, the subjects of that report have not been implicated or accused of any other related charges. Therefore, they are entitled to the protection afforded them by the confidentiality laws, just as the defendant would be if another private party requested access to his file. The court is able to reach seemingly divergent conclusions regarding disclosure because it perceives two differences in these cases. In one, the defendant is charged with a crime related to the subject matter of the report at issue and it is a public official charged with enforcement of the law who seeks the disclosure. In the other, the subjects of the report are not charged with or accused of any further charges, and it is a private citizen and not a governmental agency which seeks access to the confidential information.
Consequently, the court hereby orders the records maintained by the Westchester Department of Social Services with file number SCR01723098 to be provided for an in camera inspection within 30 days from the date hereof. DSS may redact any information contained therein which is not related to or concerning the defendant. After review of such records the court shall make a determination as to what information therein may be offered at the Huntley hearing.

. See, e.g., Ariz Rev Stat Annot § 41-1959 (A); §§ 8-546.07, 13-3620.01; Fla Stat Annot §§ 415.51 (renum § 39.202), 415.513 (4) (renum § 39.205 [4]); § 415.5131 (1) (renum § 39.206 [1]); Mich Comp Laws Annot § 722.627 (1); § 722.633 (5).

. See also, Pennsylvania v Ritchie, 480 US 39 (1987) (interest of defendant charged with child abuse, as well as that of Commonwealth of Pennsylvania, in insuring fair trial could be fully protected by requiring that Pennsylvania Children and Youth Services child abuse file be submitted only to trial court for an in camera review, as to allow full disclosure of file to defense would unnecessarily sacrifice the State’s compelling interest of protecting child abuse information).